IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-03101-SKC-STV

CARLOS A. BASURTO SALGADO,

        Plaintiff,

v.

WEST COLORADO MOTORS, LLC/AUTONATION, INC.,
d/b/a AUTONATION SUBARU ARAPAHOE,

        Defendant.

**ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 24)**

        This is an employment discrimination case. Plaintiff Carlos A. Basurto Salgado alleges Defendant West Colorado Motors, LLC/Autonation, Inc., discriminated against him based on his race, and constructively discharged him. The matter is now before the Court on Defendant's Motion for Summary Judgment (MSJ or Motion). Dkt. 24. The Court has considered the MSJ and its related briefing (Dkts. 25, 26), the evidence, the docket, and relevant law. No hearing is necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States. Because the Court finds the *Faragher/Ellerth* affirmative defense relieves Defendant of any alleged liability, the Motion is granted.

1

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton,* 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The court must also consider the undisputed material facts in

2

the light most favorable to the non-moving party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

## BACKGROUND

The Court finds the following facts are undisputed: Plaintiff was a sales representative for Defendant selling autos. He alleges Defendant discriminated against him based upon his race and created a hostile work environment all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* Dkt. 1, ¶¶20-35. And he claims Defendant constructively discharged him. *Id.* at ¶3.

Plaintiff is Hispanic. Dkt. 26-1, ECF p.2, ¶1.[1] Defendant hired him in September 2020. *Id.* at ECF p.2, ¶2. The alleged discrimination was committed by Defendant's then-employee, Jeff Lombardo, who was Plaintiff's supervisor. *Id.* at ECF p.2, ¶3. Mr. Lombardo referred to Plaintiff as "Señor Puta," which means "Mr. Bitch," in front of others, including customers, coworkers, and management. *Id.* at ECF p.2-

---

[1] Defendant followed this Court's Standing Order for Civil Cases, specifically § C.4.c, which explains the Court's requirement that, on motions for summary judgment, parties shall put forth their Statement of Undisputed Material Facts in a three-column format with specific references to materials in the record that establish or contradict the asserted fact. *See* Dkt. 24-1. Plaintiff, however, failed to follow the Court's Standing Order. *See generally* Dkt. 25 (failing to utilize the Court's required three-column format or to provide specific references to the record). Defendant then attempted to organize Plaintiff's facts into the correct format. *See* Dkt. 26-1. Because the Plaintiff violated the Court's Standing Order, the Court looks to Dkt. 26-1, including Defendant's attempt to organize Plaintiff's facts, for the Court's understanding of the parties' Statement of Undisputed Material Facts.

3

3, ¶7; *id.* at ECF p.12, ¶¶A-B.[2] He stabbed Plaintiff's soccer ball with a knife in front of Plaintiff and other employees after Plaintiff and another employee had been playing with it on Defendant's property during work hours. *Id.* at ECF p.3, ¶¶9-12.[3] Mr. Lombardo physically assaulted Plaintiff in front of other employees (the "horseplay incident"), which Plaintiff believes was racially motivated. *Id.* at ECF p.4, ¶¶12-15. And Mr. Lombardo refused to help Plaintiff purchase a car on Christmas Eve in 2020 because of Plaintiff's race and national origin. *Id.* at ECF pp.4-5, ¶¶16-17. Plaintiff's employment with Defendant ended on or about August 10, 2021, when he resigned; he claims his resignation was a constructive discharge. *Id.* at ECF p.10, ¶¶38-39.

Pertinent to the Court's analysis, Plaintiff does not dispute that he never reported any of the above incidents to Defendant during his employment; he first reported these incidents when he filed his administrative charge of discrimination on December 28, 2021. *Id.* at ECF p.5, ¶19; Dkt. 1, ¶18. "More specifically, Plaintiff at no time ever reported his claims of discrimination to [Defendant's] AlertLine, Legal Department General Manager, Human Resources Department, or Business Ethics

---

[2] While Defendant disputed who heard these derogatory words, Plaintiff testified in his deposition that Mr. Lombardo spoke them in front of customers, employees, and managers, which is unrefuted.

[3] While Plaintiff disputes Defendant's Paragraphs 11 and 12, the Court finds Plaintiff's record citations inapposite because Plaintiff plainly admitted that Mr. Lombardo's comments about not playing soccer were directed at all employees in the showroom at the time. *See* Dkt. 25-2, 115:20-22. Defendant's Paragraphs 11 and 12 are thus undisputed.

4

line." Dkt. 26-1, ECF pp.5-6, ¶20. Nor did he report any injury from the assault by filing a worker's compensation claim with Defendant or the Colorado Worker's Compensation Division. *Id.* at ECF p.5, ¶18. And it is undisputed that Defendant's anti-discrimination policy requires anyone, including management, who witnesses discriminatory or harassing behavior to report that behavior. *Id.* at ECF p.13, ¶¶K-L.

Plaintiff has not directed the Court to any evidence to dispute that Defendant "maintains and enforces an antidiscrimination [sic] policy prohibiting racial discrimination and harassment in the workplace." *Id.* at ECF p.6, ¶22. Further, he admits that "[a]ll [Defendant] employees are subject to this anti-discrimination policy, including all of [Defendant's] managers and supervisors." *Id.* at ECF p.6, ¶23.

Defendant provides multiple avenues for employees to report violations of its anti-discrimination policy to Defendant, including "[Defendant's] telephonic Alertline toll free number: 800-597-0094 and its Alertline online reporting, www.alertline.com, both of which can accept reporting 24 hours per day, 7 days a week; its Legal Department; its corporate or regional Human Resources Department; or its Business Ethics Committee." *Id.* at ECF p.7, ¶¶25-26. Plaintiff admits Defendant made him aware of both the policy and the reporting avenues during his onboarding process, and he signed an acknowledgement. *Id.* at ECF pp.6-8, ¶¶24, 27. Plaintiff further admits that "[a]t no time did Plaintiff report any harassing or discriminatory conduct of Mr. Lombardo to [Defendant] prior to filing his administrative charge." *Id.* at ECF

5

p.8, ¶28. Indeed, when Plaintiff informed his direct report that he was going home early on July 23, 2021 (his last day of work), he never told his direct report at anytime that he had been injured at work or discriminated against by Mr. Lombardo. *Id.* at ECF p.8, ¶29.

Defendant "first learned of Plaintiff's July 17, 2021 horseplay incident on August 2, 2021, from Mr. Lombardo."[4] *Id.* at ECF p.8, ¶30. "Upon Mr. Lombardo's reporting of the incident, [Defendant] immediately commenced an investigation."[5] *Id.* at ECF p.9, ¶31. The first time Plaintiff reported any of his allegations to Defendant was when Defendant received a letter shortly thereafter from Plaintiff's former attorney "asserting that Plaintiff had been injured at work by Mr. Lombardo, but making no claim of racial harassment or discrimination." *Id.* at ECF p.9, ¶¶32-33.

"The results of [Defendant's] investigation revealed that Plaintiff admitted that he and Mr. Lombardo were horsing around on that date at work and that he sustained injuries . . . ." *Id.* at ECF p.9, ¶34. As a result of Defendant's investigation, Defendant terminated Mr. Lombardo "for a violation of [Defendant's] workplace fighting, horseplay, practical jokes or other disorderly conduct policy." *Id.* at ECF p.10, ¶36.

---

[4] While Plaintiff purports to dispute this fact, his record citation does not, in fact, contradict it or create a genuine issue. Nor is his record citation sufficiently specific as directed by this Court's Standing Order.

[5] Plaintiff states this fact is disputed but offers no record citation to support his contention. Thus, again, the Court accepts the fact since there is no genuine issue about it.

"On August 6, 2021, [Defendant] advised Plaintiff to make arrangements to return to work." *Id.* at ECF p.10, ¶37. Plaintiff, however, never returned. *Id.* at ECF p.10, ¶38. While Plaintiff contends he was constructively discharged, Defendant considered him to have voluntarily resigned on August 10, 2021. *Id.* at ECF p.10, ¶¶38-39.

## ANALYSIS

Plaintiff brings two claims: racial discrimination and a hostile work environment, both in violation of Title VII. Dkt. 1, ¶¶20-35. Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To survive summary judgment on a Title VII discrimination claim based on race, a plaintiff may present direct evidence of discriminatory motive, or as here, indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first "raise a genuine issue of material fact on each element of the *prima facie* case, as modified to relate to differing factual situations." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances

7

giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The burden then "shifts to the employer to offer a legitimate non-discriminatory reason for its employment decision." *Bekkem*, 915 F.3d at 1267. If the employer does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – *i.e.*, unworthy of belief." *Id.* "Although our cases have sometimes described the *McDonnell Douglas* inquiry as a 'burden-shifting' framework, the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. ---, 145 S. Ct. 1540, 1545 n.2 (2025) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

To meet his *prima facie* burden with respect to his hostile work environment claim, Plaintiff must show: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of his employment and created an abusive working environment. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citation omitted). A showing of pervasiveness requires more than a few isolated incidents of enmity. *Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x. 820, 825 (10th Cir. 2004). Thus, statements that provoke offensive feelings in an employee, or simple rude, arrogant, or boorish behavior at work is not sufficiently pervasive to rise to the level

8

of a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Rather, "[t]he harassment's severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McElroy v. American Family Ins. Co*, 51 F. Supp. 3d 1093, 1111-12 (D. Utah 2014) (citation omitted).

But Defendant also raises the *Faragher/Ellerth*[6] affirmative defense. This affirmative defense provides that an employer is not liable under Title VII if it exercised reasonable care "to prevent and correct promptly any sexually [or racially] harassing behavior," and the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also Shabestari v. Utah Non-Profit Housing*, 377 F. App'x 770, 773 (10th Cir. 2010) (same). The Tenth Circuit has explained that while *Faragher* and *Ellerth* both involved sexual harassment claims, "the principles established in those cases apply with equal force to this case of racial harassment for a number of reasons." *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1270 (10th Cir. 1998).[7]

---

[6] The defense derives from the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

[7] The *Wright* court noted, among other reasons, the "preference for harmonizing the standards applied in cases of racial discrimination and sexual discrimination," and

Here, the Court finds Defendant has carried its burden and successfully established the *Faragher/Ellerth* affirmative defense based on the undisputed material facts. Regarding the first element, it is undisputed that during all relevant times, Defendant maintained a robust anti-discrimination policy that applied to all employees. Dkt. 26-1, ECF p.6, ¶¶22-23. And Defendant provided its employees with multiple avenues to report violations of the policy. *Id.* at ECF p.7, ¶¶25-26.

Defendant has also established the second element. Plaintiff admits he was aware of both the policy and the various mechanisms to report violations of the policy. *Id.* at ECF pp.6-8, ¶¶24, 27. And he never reported any of the allegedly discriminatory behavior of Mr. Lombardo to Defendant while Plaintiff was employed there.[8] *Id.* at ECF p.8, ¶28. Thus, it is undisputed that Plaintiff had notice and was aware of Defendant's anti-discrimination policy, he signed a written acknowledgment of his receipt of the policy, and he never availed himself of the policy by reporting the racially discriminatory and harassing conduct which he now brings in this lawsuit.

---

its "belief that the employer-liability standards are equivalent for race and sex-based discrimination." *Id.* (citations omitted); *see also Shabestari*, 377 F. App'x at 773 (applying *Faragher/Ellerth* defense in racial discrimination case).

[8] The only allegation Defendant learned of prior to Plaintiff's resignation was a report(s) of the horseplay incident, which was styled as an injury report and not a report of race discrimination or harassment. Defendant learned about it on either July 30, 2021, in a letter from Plaintiff's attorney, or on August 2 from Mr. Lombardo reporting the incident. In any event, Defendant immediately opened an investigation into the incident that resulted in Defendant terminating Mr. Lombardo's employment for violating its workplace conduct policy. Dkt. 26-1, ECF 10, ¶36.

Plaintiff argues that other employees, including managers, witnessed the alleged discriminatory acts, and they failed to report those acts. But he directs the Court to no evidence of any specific person who witnessed anything. And this is beside the point; it ignores the fact that Plaintiff himself never reported any discriminatory act until after he resigned.

No reasonable jury could find in Plaintiff's favor based on the record before the Court. The Court finds the undisputed material facts raise no genuine issue for trial regarding Defendant's entitlement to the *Faragher/Ellerth* affirmative defense. The Court need not analyze the merits of Plaintiff's claims as a result.[9]

\*   \*   \*

For the reasons shared above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED judgment shall be entered in favor of Defendant, who is entitled to an award of costs as may be determined by the Clerk of Court. Fed. R. Civ. P. 54(d).

DATED: August 1, 2025.

BY THE COURT:

_____
S. Kato Crews
United States District Judge

---

[9] For purposes of this Order, the Court assumes the merit of Plaintiff's claims. But even assuming they are meritorious, they fail for application of the *Faragher/Ellerth* affirmative defense.

11